UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GEOFFREY CLAYTON                          CIVIL ACTION

VERSUS                                    NO: 10-1228

DAVID ZULLO, ET AL                        SECTION: J

## ORDER AND REASONS

Before the Court are Defendants' *Motion to Dismiss or in the Alternative, Motion for Summary Judgment* **(Rec. Doc. 78)**, Plaintiff's *Opposition* **(Rec. Doc. 90)**, and Defendants' *Reply* **(Rec. Doc. 94)**. Defendants' motion was set for hearing on the briefs on Wednesday, February 12, 2014. Having considered the motion, the parties' submissions, the record, and the applicable law, the Court finds, for the reasons expressed below, that Defendants' motion should be **GRANTED.**

### PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff Geoffrey C. Clayton ("Plaintiff"), a former member of the United States Army National Guard, alleges the following facts. During a tour in Iraq, Plaintiff sustained significant bilateral hearing loss, and when he returned from deployment, he began to suffer from post traumatic stress disorder (PTSD).

On May 1, 2009, Plaintiff and his fiancée came to New Orleans to attend the New Orleans Jazz Festival. They stayed at a hotel in the downtown area near the French Quarter. On May 2, 2009,

1

Plaintiff was drinking alcohol and began to suffer from an episode of PTSD, which made him suicidal. At the hotel where he was staying, Plaintiff cut his own wrists, wounding himself only superficially and getting blood on his hands and arms. After a verbal argument with his fiancée in the hotel, Plaintiff, still bleeding, exited the hotel in the middle of the night and entered an empty alleyway within sight of the hotel. Plaintiff used his cell phone to call Sergeant Stevens ("Stevens"), a friend of his in St. Louis, to seek help with his PTSD. At Stevens's suggestion, Plaintiff flagged down a New Orleans police officer, Defendant David Zullo ("Zullo") who was driving by in his police vehicle. Zullo got out of his car and approached Plaintiff. The two men talked, and Plaintiff asked Zullo to speak to Stevens on the phone, but Zullo refused to take the phone because it has blood on it. Zullo asked where the blood was coming from, and Plaintiff explained that he had attempted suicide in the hotel and that his fiancée tried to clean up the blood. Zullo asked which hotel Plaintiff was staying in, and Plaintiff pointed to the hotel and said "That [expletive] hotel." At that point, Zullo walked a few steps away and spoke on his radio, asking for backup to go to the hotel to check on Plaintiff's fiancée. Plaintiff claims that he believed that Zullo was not going to offer him the help he needed, so he turned away and continued his telephone conversation with Stevens. According to Plaintiff, Zullo then approached him on his

2

left rear and deployed his taser a single time, tasing Plaintiff on his left side.

According to Plaintiff, the deployment of the taser was unprovoked and came as a complete surprise. In his deposition, Plaintiff claimed that Zullo never gave him any orders, asked him to put his hands behind his back, or attempted to place him under arrest before deploying the taser. Plaintiff claimed that he heard someone speaking to him from his left side but, because of his hearing loss, he could not determine who was speaking to him. Plaintiff alleges that he was never confrontational or uncooperative with Zullo. Plaintiff stated that he does not remember falling down when he was tased and that he believes he became unconscious and remained unconscious until he woke up in the hospital approximately four (4) hours later.

There is a video of the incident, taken from the camera attached to the taser. (Rec. Doc. 91, Manual Attachment). A timestamp on the video shows that the tasing occurred on May 3, 2009 at approximately 3:19 a.m. The video shows an image of Plaintiff standing up with his cell phone in his hands. Zullo says: "Put your hands behind your back!" Plaintiff says: "Hey, I'm on the [expletive] phone!" Zullo repeats: "Put your hands behind your back!" but deploys the taser before he completes his sentence. Plaintiff falls backwards onto the pavement, and the back of his head hits the pavement. Plaintiff begins moving almost immediately

3

and responds to Zullo's prompts, so it is clear that he is conscious. Zullo helps Plaintiff to his feet, and Plaintiff stands up and puts his hands behind his back. Zullo places handcuffs on Plaintiff, and the video ends. The video only depicts the few moments before the taser was deployed and does not capture the events that occurred prior to deployment.

In his *Opposition*, Plaintiff refers to the video of the tasing and admits that "Zullo demanded that [Plaintiff] put down the phone, but [Plaintiff] refused. Zullo then drew his Taser, instructed [Plaintiff] one more time to put the phone down, and when [Plaintiff] against refused, discharged his taser into [Plaintiff's] left side." (Rec. Doc. 90, p. 4). Plaintiff claims that "[a]t no time did Zullo warn [Plaintiff] that he would be Tased, and at no time during their encounter did [Plaintiff] physically strike, touch, resist, or threaten Zullo in any way." (Rec. Doc. 90, p. 4).

Zullo described a very different version of the facts. According to Zullo, he observed Plaintiff crouched in an alley with blood on his hands and as he approached Plaintiff, he immediately smelled a strong odor of alcohol and noticed Plaintiff's slurred speech and the blood and lacerations on his wrists. Zullo claimed that Plaintiff told him that his wounds were the result of a fight with his fiancée and that she had bitten him when he was covering her mouth with his hands. Zullo claimed that Plaintiff was pointing

4

an object that appeared to be a cell phone at his face, but that Zullo was not certain the object was not a weapon. Zullo alleges that he feared that Plaintiff had harmed his fiancée, and so he attempted to pat Plaintiff down for weapons and place him under arrest but that Plaintiff refused to comply with his orders, struggled with Zullo, and assumed a fighting stance. According to Zullo, Plaintiff became increasingly agitated and uncooperative, which led to Zullo's decision to deploy his taser.

After the incident, Plaintiff was charged with public drunkenness and resisting an officer, but the City dismissed the charges. Plaintiff alleges that Zullo and his supervisor, Defendant Robert Thomas ("Thomas"), conspired together to bring these false charges against Plaintiff in an attempt to cover up Zullo's wrongdoing.

Plaintiff filed suit against Zullo; Thomas; Warren J. Riley ("Riley"), the former Superintendent of the New Orleans Police Department ("NOPD"); and the City of New Orleans ("the City") in this Court on April 28, 2010. Plaintiff's complaint includes both federal and state claims. Plaintiff's federal claims include:

> (1) Section 1983 claims against Zullo for violation of his constitutional rights to freedom from false arrest, freedom from excessive force, and freedom from cruel and unusual punishment; and

(2) Section 1983 claim for supervisory liability against
the City, Riley, and Thomas; and

(3) Section 1983 claim against the City, alleging that the
City's policies caused the violation of Plaintiff's
constitutional rights. Plaintiff's claims against the City
include the City's alleged failure to train its officers,
its allegedly negligent hiring practices, and its alleged
engagement in a conspiracy, or negligent failure to prevent
a conspiracy, to cover up Zullo's alleged wrongful conduct.

Plaintiff's state law claims include:

(4) a negligence claim against Zullo, Riley, Thomas, and
the City; Plaintiff also alleges that the City is
vicariously liable for the actions of its officers;

(5) a battery claim against Zullo; and

(6) a claim for intentional infliction of emotional
distress against Zullo and Thomas.

In his complaint, Plaintiff alleges that his fall as a result

6

of the tasing caused multiple skull fractures and a hemorrhage in his brain. Plaintiff claims that he now suffers from loss of smell, constant headaches, numbness on the left side of his forehead, difficulty with tasks involving motor speed, delayed visual memory, and decreased category fluency and category switching. Plaintiff seeks to recover damages for physical pain and suffering, embarrassment and humiliation, emotional distress, medical expenses, and legal fees and costs. Plaintiff's complaint alleges that Zullo tased him with actual malice and with willful and wanton indifference to, and deliberate disregard for, Plaintiff's statutory and constitutional rights. Plaintiff also alleges that the City and Riley permitted and tolerated a pattern of excessive force by New Orleans police officers and created an environment where New Orleans police officers believe that the use of excessive force would not be properly investigated.

**PARTIES' ARGUMENTS**

**A. Section 1983 Claim against Zullo**

**1. Constitutional Rights Allegedly Violated**

**a. Freedom from False Arrest**

Defendants argue that Zullo had probable cause to arrest Plaintiff for public drunkenness and for resisting arrest. Plaintiff does not appear to make any arguments that specifically relate to this claim.

7

### b. Freedom from Cruel and Unusual Punishment

None of the parties appears to make any arguments specifically pertaining to Plaintiff's false arrest claim.

### c. Freedom from Excessive Force

Plaintiff argues that there are genuine issues of material fact as to whether Zullo's use of force was objectively reasonable under the circumstances. Defendants argue that Plaintiff's injuries were not caused by force that was excessive to the need, and that Zullo's use of force was objectively reasonable under the circumstances.

## 2. Qualified Immunity

Defendants argue that the Court, not a jury, must decide the issue of qualified immunity, or else Zullo's privilege of immunity from suit will be effectively lost. Defendants also contend that there was no constitutional violation here, but even if there were, no genuine issue of material fact exists as to the reasonableness of Zullo's conduct. Plaintiff argues that the law was clearly established at the time of the tasing, and therefore Zullo should not be given qualified immunity. Alternatively, Plaintiff argues that there are at least genuine issues of material fact as to the events that led up to the tasing and as to whether Zullo used excessive force and acted reasonably; therefore, the issue of qualified immunity must at least go to a jury instead of being resolved on summary judgment.

**B. Section 1983 Claim against the City for Failure to Train**

Defendants argue that Plaintiff's complaint contains mere conjecture and does not identify any specific custom or policy of the City whereby the City's alleged failure to train its officers was the moving force behind any alleged constitutional violation. Defendants also contend that the NOPD has policies regarding the use of force and the use of tasers that are designed to protect citizens from the use of excessive force, and that Zullo was trained and certified in the use of the taser.

In his *Opposition*, Plaintiff argues that the NOPD's taser use policy reflects the City's deliberate indifference to the public's right to be free from excessive force. Plaintiff also supplies a report of the Department of Justice ("DOJ"), released in March 2011 and based on an investigation that occurred during 2009 and 2010, wherein the DOJ criticizes the NOPD's policies and insufficient training on the use of force and the use of tasers and states that New Orleans police officers had been applying unconstitutional excessive force with their tasers. Plaintiff claims that the DOJ report put the City on notice that its officers were behaving in an unconstitutional matter and that the City's failure to train its officers amounted to deliberate indifference to the constitutional rights of New Orleans citizens.

Defendants argue that the DOJ report is inadmissible hearsay and thus not proper evidence to be considered on a motion for

summary judgment. Defendants also argue that even if the DOJ report is admissible, it is insufficient on its own to establish a custom or policy, and that Plaintiff has not met his burden to show other specific instances where New Orleans police officers used excessive force on similarly situated individuals.

### C. Section 1983 Conspiracy Claim against Zullo and Thomas and Claim against the City and Riley for Negligently Failing to Prevent a Conspiracy

Defendants claim that Plaintiff has failed to state a conspiracy claim because Plaintiff merely makes bald accusations that a conspiracy existed, unsupported by any factual allegations. Plaintiff does not bring any supporting facts or arguments in his complaint or *Opposition*.

### D. Section 1983 Claim against the Riley, Thomas, and the City for Supervisory Liability

Defendants argue that Plaintiff's complaint does not state a cause of action for supervisory liability because Plaintiff merely makes bald accusations without factual support. Defendants also contend that it is undisputed that Zullo was the only officer present during the tasing. Plaintiff's *Opposition* offers no argument or factual substantiation to support his claim for supervisory liability.

### E. Negligence Claims against Zullo, Riley, Thomas,

### and the City

Plaintiff attempts to state a claim against the City and Riley, claiming that they are directly liable for negligently failing to train their employees, for negligent hiring and supervision, for failing to employ a sufficient number of police officers, and for negligently disregarding the rights of citizens. Plaintiff also attempts to state a claim against Zullo for negligence regarding the tasing incident, and seeks to hold the City and Riley vicariously liable for Zullo's negligence.

Defendants argue that Plaintiff cannot prevail in a negligence claim against Zullo because Plaintiff has not shown that Zullo failed to act reasonably and thus breached his duty to Plaintiff. Plaintiff claims that he has shown that genuine issues of material fact exist as to whether Zullo acted reasonably. In their briefs, none of the parties make any specific arguments regarding direct liability for negligence on the part of the City and Riley, or regarding vicarious liability for the City and Riley based on Zullo's alleged negligence.

### F. Battery Claim against Zullo

None of the parties makes any arguments regarding this claim in their briefs.

11

### G. Intentional Infliction of Emotional Distress Claim against
### Zullo and Thomas

None of the parties makes any arguments regarding this claim in their briefs.

### H. Entitlement to Damages

Plaintiff seeks punitive damages against the City and against Zullo individually. Defendants argue that punitive damages are not available against the City and that Plaintiff is not entitled to punitive damages against Zullo because he has not shown that Zullo acted with malice toward Plaintiff. Plaintiff alleges that Zullo acted with malice in tasing him

Plaintiff also seeks compensatory damages, claiming that the tasing incident caused him to suffer multiple skull fractures, a brain hemorrhage, and permanent cognitive and sensory problems. Defendants argue that Plaintiff is not entitled to these damages because his head injuries were not caused by his fall during the tasing incident but actually were caused by combat in Iraq prior to the tasing incident. Defendants also argue that Plaintiff is not entitled to compensatory damages because Plaintiff's own actions in resisting Zullo were the cause of his alleged injuries. Plaintiff contends that his injuries were caused by the tasing and not by his own actions.

**LEGAL STANDARD**

Defendants bring this motion as a motion to dismiss for failure to state a claim and, alternatively, as a motion for summary judgment.

**A. Motion to Dismiss Standard**

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal where a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all well-pled facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The Court is not bound, however, to accept as true legal conclusions couched as factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

In order to be deemed legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's

13

claims are true. *Id.*  The complaint must contain enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 255-57.  If there are insufficient factual allegations to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, however, the claim must be dismissed. *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Twombly*, 550 U.S. at 555; *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007).

## B. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.2d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). The Court will examine the evidence in the light most favorable to the nonmoving party. *Naquin v. Fluor Daniel Servs. Corp.*, 935 F. Supp. 847, 848 (E.D. La. 1996) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)). While

14

all reasonable inferences are drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.2d at 1075. A Court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest

upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

### A. Section 1983 Claim Against Zullo

Section 1983 provides a cause of action against a person who, acting under color of state law, violates a plaintiff's rights under federal law, including the Constitution of the United States. *See* 42 U.S.C. § 1983. A government actor is liable under § 1983 if the plaintiff can prove that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005). Defendants do not challenge that Zullo was acting under color of state law as a New Orleans police officer. Therefore, the Court will move on to determining whether Plaintiff has shown a genuine issue of material fact as to whether Zullo deprived him of a constitutional right.

### 1. Constitutional Rights Allegedly Violated

Plaintiff claims that Zullo violated his constitutional rights to freedom from false arrest, freedom from excessive force, and freedom from cruel and unusual punishment.

### a. Freedom from False Arrest[1]

To prove false arrest,[2] Plaintiff must show: "(1) that he was arrested, and (2) the arrest did not have the requisite probable cause." *Rhodes v. Prince*, 360 F. App'x 555, 558 (5th Cir. 2010). "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Haggerty v. Texas S. Univ.*, 391 F.3d 653, 655-56 (5th Cir. 2004). This standard "requires more than a 'bare suspicion' but less than a preponderance of evidence." *United States v. Watson*, 273 F.3d 599, 602 (5th Cir. 2001) (internal citations omitted).It is undisputed that Plaintiff had been drinking on the evening he was arrested, and Defendants argue that Zullo had probable cause to arrest Plaintiff for public drunkenness. Plaintiff never specifically alleges in his complaint that there was a lack of probable cause for his arrest, and Plaintiff made no such argument in his *Opposition*. The Court finds that a reasonable officer in Zullo's condition could have concluded, based on Plaintiff's undisputed

---

[1] Count I of Plaintiff's complaint alleges that "Officer Zullo unlawfully detained and arrested Petitioner" and that "[b]y wrongfully tasering Plaintiff and falsely charging Petitioner with two separate crimes that he did not commit, Officer Zullo violated Petitioner's right to physical liberty" (Rec. Doc. 1, p. 11). The Court will address Plaintiff's claims for excessive force and for conspiracy to bring false charges in the sections below; in this section, the Court will only address Plaintiff's false arrest claim.

[2] A cause of action for false arrest without probable cause implicates rights under the Fourth and Fourteenth Amendments. *Sanders v. English*, 950 F.2d 1152, 1159 (5th Cir. 1992) (internal citations omitted).

behavior, that Plaintiff was drunk in public.[3] Therefore, Plaintiff's right to freedom from false arrest was not violated in this case.

### b. Freedom from Cruel and Unusual Punishment

The Eighth Amendment prohibition of cruel and unusual punishment protects convicted prisoners, not pretrial detainees. *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996). Therefore, Plaintiff cannot make a § 1983 claim for a constitutional tort based on cruel and unusual punishment.

### c. Freedom from Excessive Force

When an excessive force claim arises from an arrest, the claim is analyzed under the Fourth Amendment's reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 394-395 (1989). The plaintiff must prove: (1) that he suffered an injury, (2) that the injury directly and uniquely resulted from the application of force that was clearly excessive to the need, and (3) that the excessive use of force was objectively unreasonable at the time of the incident, without regard to the police officer's underlying intent or motive. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999); *Graham v. Connor*, 490 U.S. 386, 397 (1989). The injury must be more than merely *de minimis*. *Williams*, 180 F.3d at 703-04, *decision clarified on reh'g,* 186 F.3d 633 (5th Cir. 1999). In determining whether the

---

[3] Under Louisiana law, it is a crime to disturb the peace by "appearing in an intoxicated condition" in a manner that "would foreseeably disturb or alarm the public." LA. REV. STAT. ANN. § 14:103(A)(3) (2013).

18

use of force was objectively reasonable, the court must look at the totality of the circumstances, paying "special attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The Court must give "allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 396-97. The Supreme Court has made it clear that "[i]f an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, ... the officer would be justified in using more force than in fact was needed." *Saucier v. Katz*, 533 U.S. 194, 205 (2001), *overruled on other grounds by Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

Here, even when the Court considers the facts in the light most favorable to Plaintiff, it is clear that Zullo's use of force was objectively reasonable. Plaintiff has admitted that he drank alcohol on the date of the incident, that he was walking around a dark alley with blood on his arms, that he had just attempted suicide, that he cursed at Zullo, and that he refused to put down the cell phone when Zullo commanded him to do so. The video clearly shows Plaintiff refusing to comply with Zullo's command to put his

hands behind his back. A reasonable officer in Zullo's position could have determined that Plaintiff presented an immediate threat to Zullo's safety and also to Plaintiff's own safety, given Plaintiff's admission to a suicide attempt that evening. Plaintiff may not have been fleeing, but he was evading arrest by refusing to comply with Zullo's commands to put his hands behind his back. Zullo's split-second judgment about the amount of force that was necessary was objectively reasonable. Therefore, there is no genuine issue of material fact as to whether Zullo used excessive force, and the Court finds that there was no violation of Plaintiff's constitutional rights. Therefore, Plaintiff's § 1983 claim against Zullo should be **DISMISSED WITH PREJUDICE.**

## 2. Qualified Immunity

Because there is no genuine issue of material fact as to whether Zullo committed a constitutional tort against Plaintiff, the Court need not determine whether Zullo should be afforded qualified immunity in this case. *See Thomas v. Nugent*, 539 F. App'x 456, 459 (5th Cir. 2013).

### B. Section 1983 Claim Against the City for Failure to Train

To succeed in his § 1983 action against the City for failure to train, Plaintiff must prove that "action pursuant to official municipal policy of some nature caused a constitutional tort." *See Monell v. Dept' of Social Servs.*, 436 U.S. 658, 691 (1978). Because there is no genuine issue of material fact as to whether Zullo

20

committed a constitutional tort against Plaintiff in the first place, the Court cannot find liability on the part of the City for failure to train its officers. Therefore, Plaintiff's § 1983 claim against the City for failure to train should be **DISMISSED WITH PREJUDICE.**

### C. Section 1983 Conspiracy Claim Against Zullo and Thomas and Claim Against the City and Riley for Negligently Failing to Prevent a Conspiracy

To prevail on a § 1983 conspiracy claim, a plaintiff must show: (1) the existence of a conspiracy that involves state action, and (2) a deprivation of civil rights in furtherance of that conspiracy. *Vinas v. Serpas*, No. 10-3211, 2012 WL 2135286, at *5 (E.D. La. June 12, 2012) (Milazzo, J.) (citing *Thompson v. Johnson*, 348 Fed. App'x 919, 922 (5th Cir. 2009). To show a conspiracy, plaintiff must show that the defendants agreed to commit an illegal act. *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982) (internal citations omitted).

Here, Plaintiff has merely made bald allegations in his complaint that there was a conspiracy between Zullo and Thomas to bring false charges, or that Thomas ordered Zullo to bring false charges. Plaintiff has not offered any supporting facts or details and has not placed any evidence in the record to substantiate his conspiracy claim. Defendants argue that Plaintiff has failed to state a claim for conspiracy and for negligent failure to prevent

21

a conspiracy. In his *Opposition*, Plaintiff offers no argument or substantiation to support these claims. Therefore, the Court finds that Plaintiff has failed to state claims upon which relief can be granted, and Plaintiff's § 1983 conspiracy claims should therefore be **DISMISSED WITH PREJUDICE.**

### D. Section 1983 Claim Against Riley, Thomas, and the City for Supervisory Liability

Supervisory liability exists when there is either "personal involvement in the constitutional deprivation," or "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987). Although supervisory liability is a murky area of law,[4] it is clear that a plaintiff must show an "affirmative link" between the constitutional wrong and the supervisor's actions or inactions. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976). Because there is no genuine issue of material fact as to whether a constitutional tort was committed against Plaintiff, the Court need not determine whether there is any supervisory liability in this case. Therefore, Plaintiff's § 1983 claim against any Defendants for supervisory liability should be **DISMISSED WITH PREJUDICE.**

---

[4] *See* Kit Kinports, *The Buck Does Not Stop Here: Supervisory Liability in Section 1983 Cases*, 1997 U. Ill. L. Rev. 147 (1997).

**E. Negligence Claims Against Zullo, Riley, Thomas,**

**and the City**

Louisiana employs a duty-risk analysis for negligence claims. *Pinsonneault v. Merch. & Farmers Bank & Trust Co.,* 2001-2217 (La. 4/3/02); 816 So. 2d 270, 275-76. A plaintiff must prove five elements:

> (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard of care (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of protection element); and (5) actual damages (the damage element).

*Id.*

In his complaint, Plaintiff appears to allege that the City and Riley are directly liable for their negligent failure to train their employees in the use of tasers, their negligence in hiring incompetent police officers, their negligence in failing to properly supervise their employees, and their negligence in

disregarding the rights of citizens and failing to employ a sufficient number of police officers. Plaintiff also appears to allege that the City and Riley are vicariously liable for the negligence of their employees, Zullo and Thomas. Plaintiff does not specifically list his allegations of negligence against Zullo and Thomas. However, on a motion to dismiss, the Court must examine the complaint for any possible theory of recovery, not merely those theories that the plaintiff explicitly alleges. *See Due v. Tallahassee Theatres, Inc.*, 333 F.2d 630, 631 (5th Cir. 1964). Therefore, the Court will address a claim by Plaintiff against Zullo for his negligence in tasing Plaintiff.[5]

### 1. Claim Against Zullo Regarding the Tasing

The Court has already determined, in its discussion regarding excessive force, that Zullo's use of force was objectively reasonable under the circumstances. Therefore, in a negligence analysis, Plaintiff cannot show that Zullo breached a duty to Plaintiff by behaving unreasonably. Therefore, Plaintiff's negligence claim against Zullo should be **DISMISSED WITH PREJUDICE.**

---

[5] Plaintiff may also wish to state a claim against both Zullo and Thomas for allegedly entering into a conspiracy. However, to show a conspiracy, a plaintiff must show that the defendants agreed to commit an illegal act. *Arsenaux*, 726 F.2d at 1024. Therefore, a defendant cannot negligently enter into a conspiracy. Additionally, the Court has already found that Plaintiff has failed to bring any evidence to support a conspiracy claim.

### 2. Vicarious Liability for the City and Riley

### for Zullo's Negligence

Because there is no underlying negligence on the part of Zullo, the City and Riley cannot be held vicariously liable. *See Reed v. House of Decor, Inc.*, 468 So. 2d 1159, 1160-61 (La. 1985). Therefore, Plaintiff's claim against the City and Riley based on a theory of vicarious liability should be **DISMISSED WITH PREJUDICE.**

### 3. Direct Liability for the City and Riley

The Court has already determined that Zullo acted with reasonable care and that no tort has been committed against Plaintiff. The City and Riley cannot be held liable on theories that they were negligent in their training, hiring, or supervision of their employees because the employees have committed no underlying tort.[6]

Additionally, Plaintiff has failed to provide anything more than conclusory accusations that the City and Riley failed to supervise their police officers, failed to employ a sufficient number of police officers, and negligently disregarded the rights of citizens. (Rec. Doc. 1, p. 20). Plaintiff has not offered any factual allegations to support this claim in his complaint or in

---

[6] For example, to prove a claim for negligent hiring, Plaintiff would have to show, *inter alia*, that the employee acted negligently. *Roberts v. Benoit*, 605 So. 2d 1032, 1047 (La. 1991). Because the Court has already determined that Zullo, the employee in question, acted reasonably and was not negligent, Plaintiff cannot establish a claim for negligent hiring.

his *Opposition*. Therefore, Plaintiff's direct negligence claims against the City and Riley should be **DISMISSED WITH PREJUDICE.**

### F. Battery Claim Against Zullo

Under Louisiana law, a battery is defined as "[a] harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact … ." *Caudle v. Betts*, 512 So. 2d 389, 391 (La. 1987). With respect to the element of intent, "[t]he intention need not be malicious nor need it be an intention to inflict actual damage. It is sufficient if the actor intends to inflict either a harmful or offensive contact without the other's consent." *Id*. However, when a police officer uses "reasonable force to restrain an arrestee," the police officer is shielded from liability for the tort of battery. *Ross v. Sheriff of Lafourche Parish*, 479 So. 2d 506, 511 (La. 4 Cir. 1985). The Court has already determined that Zullo's use of force to arrest Plaintiff was reasonable; therefore, Plaintiff's battery claim should be **DISMISSED WITH PREJUDICE.**

### G. Intentional Infliction of Emotional Distress Claim against Zullo and Thomas

Plaintiff attempts to bring claims against both Zullo and Thomas for intentional infliction of emotional distress. It is not entirely clear from Plaintiff's complaint, but it appears that Plaintiff's claim for intentional infliction of emotional distress is based on his allegations that Zullo and Thomas conspired to

bring false charges against him. (Rec. Doc. 1, p. 21-22).[7]

To recover for intentional infliction of emotional distress, a plaintiff must prove the following elements: 1209-1210

> (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.

*White v. Monsanto Co.*, 585 So. 2d 1205 (La. 1991). "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id*.

Here, Plaintiff alleges that Zullo and Thomas "intentionally abused, humiliated and embarrassed" him "in a manner that was extreme, outrageous, and unjustified." (Rec. Doc. 1, p. 22). However, Plaintiff has only made bald allegations in his complaint that there was a conspiracy between Zullo and Thomas in the first place, and the Court has already found that the Plaintiff failed to state a claim for conspiracy. Plaintiff has brought no additional

_____

[7] Even if Plaintiff actually intended to bring a claim against Zullo for intentional infliction of emotional distress based on the tasing, Plaintiff's claim would fail because the Court had already determined that Zullo acted reasonably; Zullo's actions therefore could not be considered extreme and outrageous.

evidence or allegations in his *Opposition* to support his claim that there was a conspiracy or that Zullo and Thomas entered into such a conspiracy with the intention of inflicting severe emotional distress. Therefore, the Court finds that Plaintiff's claim for intentional infliction of emotional distress should be **DISMISSED WITH PREJUDICE.**

### H. Entitlement to Damages

Because the Court finds that all of Plaintiff's claims should be dismissed, the Court need not discuss Plaintiff's entitlement to damages.

### CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' *Motion to Dismiss or in the Alternative, Motion for Summary Judgment* **(Rec. Doc. 78)** is **GRANTED.**

**IT IS FURTHER ORDERED** that all of Plaintiff's claims against Defendants in the above-captioned matter are hereby **DISMISSED WITH PREJUDICE.**

**IT IS FURTHERED ORDERED** that the pretrial conference, currently set for Thursday, February 27, 2014, and the jury trial, currently set for Monday, March 31, 2014, are **CANCELLED.**

New Orleans, Louisiana, this 26th day of February, 2014.


CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

29